**In re COVENTRY COMMONS ASSOCIATES, Debtor.**

**Bankruptcy No. 91–07585–R.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Dec. 8, 1992.

Barbara Rom, Detroit, MI, for debtor.

Michael Hammer, Detroit, MI, for creditor.

## SUPPLEMENTAL OPINION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

This opinion supplements the bench decision given on September 16, 1992, regarding confirmation of the modified reorganization plan proposed by the debtor, Coventry Commons Associates. Objections to confirmation were filed by the primary secured creditor, Travelers Insurance Company (Travelers), whose claim was separately classified. All of the other classes of creditors have voted to accept the plan.

Travelers' claim in this case is approximately $9,200,000. The parties have agreed that the real property, a strip shopping center, has a value of $8,000,000. The plan proposes to pay Travelers $400,000 in cash from rents accumulated during the

Chapter 11, and to pay the balance of Travelers' claim on a monthly basis on a 30 year amortization schedule with the full balance due in seven years. The debtor plans to pay interest at a rate of 8.5% and to issue Travelers a new assumable note. The debtor proposes to pay Travelers' claim on an entirely secured basis. The equity holders will retain their interest in full.

Travelers objects on four grounds. First, Travelers argues that the plan is not fair and equitable with respect to its secured claim because the interest rate offered is not a market rate, as required by § 1129(b)(2)(A) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1989) (the Code). Second, Travelers contends that the plan is not feasible, as required by § 1129(a)(11). Third, Travelers contends that the plan violates the absolute priority rule with respect to its unsecured claim, contrary to § 1129(b)(2)(B). And fourth, Travelers objects to the plan because the plan, in its view, improperly provides for the debtor's use of the rents in which Travelers has a first lien.

## II.

With respect to Travelers' objection that the 8.5% interest rate offered to it by this plan is not the market rate, the Court notes that this objection is essentially the same objection made by Prudential in *In re Eastland Partners Limited Partnership*, 149 B.R. 105 (Bankr.E.D.Mich.1992), decided this date. Like Prudential, Travelers contends that because no current market exists for similar loans, confirmation must be denied. For the reasons indicated in the *Eastland Partners* case, that argument is rejected.

Travelers further argues that the appropriate rate of interest, if one is to be set, is 9⅝% to 10%. Travelers bases its argument on the testimony of its witness, Mr. Bernard, that the market would add 250 to 275 basis points to the seven year Treasury Bill

rate, plus an additional 12.5—25 basis points if there is no fee.

The seven year Treasury Bill rate was approximately 7% at the time of the evidentiary hearing in this matter and has since declined. The seven year Treasury Bill rate on September 16, 1992 was 5.86%, and the Court rounds that to 5.9% for ease of discussion. For the reasons stated in the *Eastland Partners* case, the Court finds that the appropriate "risk free" rate of return to use in finding the appropriate market rate of interest is 5.9%.[1]

The debtor contends that the interest rate that it proposes to pay Travelers is reasonable in light of several factors that have actually reduced Travelers' risk since the original loan in 1988, when the parties negotiated a 9.615% contract rate. First, the plan amortizes the principal whereas the original loan required repayment of interest only. Second, the property is now 86% leased, whereas no leases had yet been signed when Travelers made its original commitment. Third, the debt service ratio is now 108%, whereas originally, it was closer to 71%. The debtor also contends that the spread over the seven year Treasury Bill rate is the same under its plan now as it was under the original note, and that therefore the rate offered by the plan is reasonable in light of the reduced risks.

The difficulty with the debtor's approach is that it does not constitute an analysis of the current market rate of interest. The issue is not one of "fairness" or "reasonableness" in the abstract. Rather, the issue requires an analysis of the current market rate of interest. *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 431 (6th Cir.1982). Therefore, the Court is required to reject this aspect of the debtor's analysis.

Since the Court must find a current market rate of interest, it must examine the evidence presented in the hearings. Mr.

---

1. For the reasons indicated below at pp. 114–15, the Court held a final confirmation hearing on October 19, 1992. At that time, the seven year Treasury Bill rate had increased slightly, and Travelers requested the Court to impose the increased rate. The Court declined to do so, however, holding that the matter had been litigated and decided, and that the matter should be considered closed.

Reinhart, one of the debtor's experts, indicated that the current market would impose a spread over the current Treasury Bill rate of 175 to 200 basis points. The debtor's other expert witness, Mr. McCoppin, testified that the spread offered would be 200 to 250 basis points. Finally, Travelers' expert witness, Mr. Bernard, testified that the market was 200 to 275 basis points.

As found earlier, the current seven year Treasury Bill rate is 5.9%, so that even if the market demands a spread of 260 basis points, then the debtor's rate of interest of 8.5% is a current market rate. The Court notes that such a spread is at the upper end of the ranges testified to by the various witnesses, and therefore the Court finds that the 8.5% interest rate offered by the debtor is the current market rate, and Travelers' objection on this ground is overruled.

### III.

■ Travelers' next objection is that the plan is not feasible within the meaning of § 1129(a)(11). The standards for determining the feasibility of a plan of reorganization are set forth in *Eastland Partners,* and those standards will be applied in this case.

Travelers' challenges to the feasibility of this plan are similar to the challenges made by Prudential in the *Eastland Partners* case. Travelers contends that there is insufficient evidence that the debt can be paid off in 1999, and that there is insufficient evidence that the debtor can make the payments required between now and 1999.

Travelers first contends the debtor does not have a viable "exit strategy," because it is speculative to conclude that the debtor will be able to refinance, as it plans in 1999. Moreover, Travelers contends that no lender will refinance in 1999 based on the debtor's own projections of its financial condition as of that time.

■ The Court rejects both arguments and concludes that the debtor has established a reasonable likelihood of refinancing this property to pay off Travelers' debt

by 1999. It is certainly true that the debtor has no commitment in hand to refinance in 1999, and it is equally true that the market as presently functioning, or dysfunctioning, would not permit any refinancing at present. But these facts, while perhaps relevant, are not controlling. The debtor is not required to prove with certainty the success of its plan, as noted in *Eastland Partners.* Here the evidence, especially from Dr. Weiss, whose testimony the Court found entirely credible, establishes that there is substantial reason to believe that the present state of the real estate financing market will not continue, and that by 1999, the market will once again allow for real estate financing of the type that the debtor needs to pay off Travelers. Ultimately, in evaluating this issue, the Bankruptcy Code requires the Court to predict the future. Here the evidence establishes a likelihood that the real estate financing market will recover by 1999, and the Court so finds.

The Court has reviewed the debtor's specific plans in its analysis of refinancing and concludes that this analysis affords a reasonable basis upon which to proceed. Travelers' objection and challenge to the debtor's refinancing analysis is based totally on factors considered in today's essentially dysfunctional market. There is no reason to believe that such factors will be so critically considered when the market returns to normal, as Dr. Weiss predicted.

As noted, Travelers also challenges the debtor's projections of its ability to make the monthly principal and interest payments in the time period until 1999. This challenge is based on arguments regarding occupancy, tenant improvements, leasing commissions, rental rates, etc.

As in *Eastland Partners,* the Court concludes in this case that the debtor's assumptions and conclusions regarding these matters are entirely reasonable, for two reasons. First, the debtor's principal, Mr. Nelson, who made these assumptions and judgments, is experienced in the real estate business and qualified to make them. Second, his projections and conclusions are based upon his actual experience with this

particular project. Beyond that, the Court notes that the expanding demographics of Canton Township, where this shopping center is located, certainly support the conclusion that this shopping center can and will succeed.

Ultimately, the Court concludes that the debtor's evidence that the plan will succeed was much more persuasive than Travelers' challenges to it. Accordingly, the Court finds that the reorganization is not likely to be followed by the need for further reorganization or liquidation. Travelers' objection on this ground is overruled.

### IV.

■ In its third objection, Travelers asserts that this plan violates the absolute priority rule of § 1129(b)(2)(B). That section provides that in a plan, a class of unsecured claims which has rejected the plan must receive property of a value as of the effective date of the plan equal to the allowed amount of the claim, or else junior claims and interest can receive or retain nothing. 11 U.S.C. § 1129(b)(2)(B) (1989).[2] The basis of Travelers' objection is that the plan provides for the equity interest to be retained while not paying Travelers' unsecured claim in full at its present value. Travelers contends that an 8.5% interest rate will not provide it the present value of the claim.

■ The Court concludes that this is essentially the same argument that Travelers made in support of its objection to the treatment of the secured portion of its claim. For the same reason that the Court overruled that objection, it likewise overrules this objection and finds that the provisions of § 1129(b)(2)(B) regarding the unsecured portion of Travelers' claim are met,

and that there is no violation of the absolute priority rule.[3]

### V.

■ Finally, Travelers objects to the part of the plan regarding the debtor's use of accumulated rents. The debtor's plan proposes to pay Travelers $400,000 from accumulated rents and use the balance of the rents, over $200,000, to pay Chapter 11 administrative and other operational expenses. Travelers contends that all of the accumulated rents must be used to pay its debt. The debtor contends that it is not required to use the full amount of rents to pay Travelers.

This Court first addressed this issue in *In re Coventry Commons Assocs.*, 134 B.R. 606 (Bankr.E.D.Mich.1991). In that opinion, this Court held that Travelers had a perfected security interest in future rents which would be received from the time that all requirements of the assignment of rents statute were met until the period of redemption on the foreclosure would expire, or until the property would be redeemed. The Court further held that Travelers was entitled to adequate protection of that interest under § 363(e) of the Code, and that requiring the debtor to use the present rents to preserve the property was the best way to protect Travelers' interest in the future rents.

On appeal, the District Court held that Travelers does have a valid, binding perfected security interest in the present rents. The court added:

As Travelers has a perfected present security interest in the rents, such rents must be treated as cash collateral as required under 11 U.S.C. §§ 363(a) and 552(b). The rents are cash collateral because both the bankruptcy estate and

---

**2.** With respect to a class of unsecured claims—
    (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
    (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.
11 U.S.C. § 1129(b)(2)(B) (1989).

**3.** Technically, the debtor's plan violates the requirement in § 1122(a) that only similar claims can be classified together. This plan classifies Travelers' secured and unsecured claims in the same class, and treats them identically. However, because Travelers' unsecured claim will be paid in full with interest, the Court concludes that this technical violation creates no actual prejudice to Travelers' substantive rights.

Travelers have an interest in the rents and the rents are subject to a security agreement as provided by § 552(b). *See In re Bethesda Air Rights Ltd. Partnership,* 117 B.R. 202, 209–10 (Bankr.D.Md. 1990) (where rents are treated as security, rents collected post-petition are cash collateral, even where creditor had perfected its interest in the rents pre-petition and had satisfied state law requirements to enforce assignment of rents.).

As the rents are cash collateral, the debtor, here Coventry, may not use such rents without first gaining the approval of the bankruptcy court. This is because, under Bankruptcy Code, Travelers, as a party holding an interest in the rents, is entitled to require that its interest in the rents is adequately protected. 11 U.S.C. §§ 363(c)(2)(B) & (e).

*In re Coventry Commons Assocs.,* 143 B.R. 837, 839 (E.D.Mich.1992). The District Court went on to hold that this Court had not specifically ruled on the issue of whether Travelers' interest in the rents as cash collateral was being adequately protected, and therefore that specific issue was remanded to this Court. Upon remand, this Court concluded that the issue was best addressed in the context of plan confirmation, and so the issue is now ripe for determination.

■ This Court begins with the proposition, affirmed by the District Court in this case, that under § 363, a debtor is entitled to use property in which a creditor has a security interest if that interest is adequately protected. 11 U.S.C. § 363 (1989). This unremarkable principle applies both pre-confirmation and post-confirmation. If the mere fact that the debtor's property was subject to a security interest meant that it had to be used to pay off the secured creditor's claim, there would be no Chapter 11. All secured property would have to be surrendered to the secured creditor in payment of the debt. Indeed, potential debtors would have substantial difficulty in obtaining counsel if the debtor were required to pay an undersecured creditor all of its available cash. The Court concludes that such cannot be the law, and to the extent that Travelers argues that all of

its collateral, even its cash collateral, must be used to pay its debt, the Court rejects that argument. The Court specifically rejects Travelers' contention that *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) requires such an absurd result.

■ This Court does agree with *In re Montgomery Court Apartments, Ltd.,* 141 B.R. 324 (Bankr.S.D.Oh.1992), and *In re Willowood East Apartments of Indianapolis II, Ltd.,* 114 B.R. 138 (Bankr.S.D.Oh. 1990), cited by Travelers. In those cases, the courts noted that the debtor's usage of cash collateral will decrease the value of a secured creditor's interest in property unless the creditor is protected by cash payments, an additional or replacement lien, or other such indubitable equivalent. This is very traditional and unremarkable adequate protection law. 11 U.S.C. § 361 (1989). But it does not follow, as Travelers contends, that all rents must be used to pay Travelers.

■ The Court likewise rejects Travelers' contention that the debtor cannot use its collateral to pay professional fees. As noted earlier, and as held by the District Court in this case, the debtor can use collateral, even cash collateral, as long as the secured creditor's interest is adequately protected. The only limitations upon this right are those found in § 363.

■ Contrary to Travelers' position, § 506(c) does not compel a different conclusion. That section sets forth the conditions upon which a secured creditor's collateral can be surcharged. Yet, the use of Travelers' cash collateral to pay the debtor's professional fees does not constitute a surcharge. 11 U.S.C. § 506(c) (1989). The debtor is not asking Travelers to pay for the debtor's professional fees. If Travelers' interest is adequately protected, then by definition there will be no impairment of Travelers' interest in the nature of a surcharge, or of any other nature.

Thus, the key issue is whether Travelers' interest in the rents is adequately protect-

ed.[4]

The debtor contends in its post-hearing brief that Travelers' interest in that property is protected by the plan which offers full repayment on Travelers' claim with interest, and also secures the debt with a mortgage and an assignment of rents. The debtor properly notes that under § 1129(b)(2)(A)(i), Travelers is entitled to retain its lien and to receive property with a present value equal to the allowed amount of its claim. The Court has already held that the plan is feasible, and that the interest rate offered is a proper market rate. Thus, the Court has held that the plan does properly offer present value equal to the allowed amount of Travelers' claim.

The Court concludes, however, that the plan is not so clear with regard to Travelers' retaining its liens. The plan modification of April 17, 1992 provides:

> Travelers will hold a lien by way of a mortgage on the Property securing payment of the Secured Note similar in terms and conditions not addressed in the Plan to the terms and conditions in the original mortgage between Travelers and the Debtor. A non-recourse promissory note and a mortgage incorporating these terms shall be delivered to Travelers on the Closing Date.

Modifications to Debtor's Plan of Reorganization, pp. 3–4. It may be that the debtor intends to allow Travelers to retain its lien in the rents. Indeed, its post-hearing brief suggests this intent, but does not explicitly state it. The Court concludes that without a clear statement in the plan that Travelers retains its lien in all rents, Travelers' security interest in the rents is not adequately protected. Accordingly, Travelers' objection on this narrow ground is sustained.

The Court will allow the debtor 14 days within which to file an amended plan to clarify its intent regarding Travelers' liens. If such an amendment is filed within 14 days, the Court will hold a further hearing on confirmation.

The holding there that in most cases all cash must be paid to the secured creditor, in order to protect it, does not limit the Court's discretion to find in a particular case that the creditor is adequately protected through a feasible plan.

---

**4.** The Court concludes that nothing in the recent decision in *Mount Pleasant Limited Partnership* and *Grand Traverse Development Co. Limited Partnership,* 144 B.R. 727 (Bankr.W.D.Mich. 1992), regarding assignment of rents issues would affect this Court's analysis in this case.