**In re PROALERT, LLC, Debtor.**

**Security Leasing Partners, LP, Appellant,**

v.

**ProAlert, LLC, Appellee.**

**BAP No. AZ–03–1601–PBD.**
**Bankruptcy No. 03–17193–CGC.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 24, 2004.

Filed Sept. 1, 2004.

---

2. The petition was filed on December 27, 2002, so 360 of that year's days were pre-petition.

Thomas J. Salerno, Squire, Sanders & Dempsey LLP, Phoenix, AZ, for Security Leasing Partners, LP, Appellant.

Gerald K. Smith, Lewis & Roca, Phoenix, AZ, for ProAlert, LLC, Appellee.

Before PERRIS, BRANDT and DONOVAN,[1] Bankruptcy Judges.

1. Hon. Thomas Donovan, Bankruptcy Judge for the Central District of California, sitting

## OPINION

PERRIS, Bankruptcy Judge.

This appeal raises the question of whether a bankruptcy court may allow the use of cash collateral pursuant to § 363 [2] in a chapter 11 case without considering whether the requirements for a § 506(c) surcharge were met. The bankruptcy court concluded that it could, and allowed the debtor in possession to use cash collateral to pay estate professionals over the objection of an adequately protected but undersecured creditor with a security interest in the cash collateral. We AFFIRM.

## FACTS

ProAlert, LLC ("ProAlert"), a chapter 11 debtor in possession, sells and leases security alarm systems and provides installation, maintenance and monitoring services. ProAlert's primary asset is the recurring monthly revenue ("RMR") from its customer contracts.

Security Leasing Partners, LP ("SLP") is ProAlert's primary secured creditor. SLP has a lien on most of ProAlert's assets and the proceeds of those assets, specifically including ProAlert's prepetition customer contracts and the RMR from those contracts. While ProAlert disputes the amount of SLP's claim, it concedes in its appellate brief that SLP is undersecured.

Shortly after the petition date, ProAlert filed an Emergency Motion for Interim Use of Cash Collateral ("the cash collateral motion") covering the first 90 days following the petition date. ProAlert sought to use SLP's cash collateral for operational expenses of the business and to pay attor-

ney fees, a valuation expert and an accountant.

SLP ultimately consented to the use of cash collateral for most of the ordinary operating expenses requested by ProAlert. However, it objected to the cash collateral motion to the extent ProAlert wanted to pay estate professionals. SLP's position was that ProAlert was "seeking to use a cash collateral motion brought under Section 363 to effectuate a surcharge under Bankruptcy Code § 506(c)[,]" and that the requirements of § 506(c) were not met. Supplemental Response and Objection of SLP Regarding Certain Motions Filed by the Debtor, p. 7.

The bankruptcy court held a hearing on the cash collateral motion. At the hearing, the bankruptcy court announced that it would defer a decision on the cash collateral motion as it related to attorney fees until such time as the issue became ripe for determination. The court ordered payment of an adequate protection amount with regard to the operational expenses and announced that it would enter an order the next day on the question of whether ProAlert could use cash collateral to pay the valuation expert and the accountant.

The court entered an order ("the cash collateral order") stating, in relevant part, as follows:

The issue before the court is whether the cash collateral of [SLP] may be used to pay a retainer to a valuation expert to be employed by the Estate and to pay an accountant to prepare tax returns for 2002.

At the hearing on October 20, 2003, the Court ruled that ongoing payment of professional fees from cash collateral

by designation.

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

may be allowed under 11 U.S.C. section 363(c)(2) without satisfying the "benefit to the creditor" test under 11 U.S.C. section 506(c). The Court agrees with the analysis in *In re Coventry Commons Associates,* 149 B.R. 109 (Bankr. E.D.Mich.1992) that use of cash collateral for these purposes may be allowed over the objection of the secured creditor so long as the creditor's interest is adequately protected. Analytically, if the creditor's interest is adequately protected, then, by definition, there is no surcharge and section 506(c) does not come into play.

SLP argues that using its cash collateral for payment to the two professionals neither benefits the ongoing business nor enhances Debtor's operations (and therefore its collateral base). Nonetheless, Debtor asserts that it is crucial to its reorganization efforts to be current on its tax returns and to engage an expert who can address the critical question of the value of the business as represented by its contracts and the resultant Recurring Monthly Revenue. The Court concludes that while SLP's argument is correct as far as it goes, it doesn't address the right question for the reason that Debtor may nevertheless use the cash for the purposes stated so long as SLP's position is adequately protected. The question is, therefore, what is necessary for such adequate protection?

The answer is the Debtor must replenish any funds used for payments to the two professionals no later than December 31, 2003, on a dollar for dollar basis. Debtor will be allowed to pay up to $25,000 for the preparation of tax returns and up to $10,000 as a retainer for the valuation expert from SLP's cash collateral; any such amounts must be repaid by December 31, 2003, or the adequate protection order will be in default. These payments are in addition to the payments already ordered and in addition to further amounts that may be ordered for collateral base diminution beginning in December, 2003.

November 20, 2003 Cash Collateral Order, p. 1:8–2:14 (footnotes omitted).[3] ProAlert has used cash collateral to pay a retainer to the valuation expert as permitted in the cash collateral order.[4]

SLP timely appeals, raising a narrow legal issue: whether the bankruptcy court erred in allowing the use of SLP's cash collateral without considering whether the surcharge requirements set forth in § 506(c) were met. SLP does not dispute any other aspect of the cash collateral order, and states in its reply brief that it is not challenging the bankruptcy court's adequate protection determination.

### ISSUE

Whether the bankruptcy court erred in allowing ProAlert to use SLP's cash collateral to pay the two estate professionals without satisfying the surcharge requirements set forth in § 506(c).

### STANDARD OF REVIEW

■ The issue raised by SLP requires a determination of the meaning and scope of application of Bankruptcy Code provisions. This is a matter of law, which we review de novo. *See, e.g., In re BCE West, L.P.,* 319 F.3d 1166, 1170 (9th Cir.2003).

---

**3.** Due to an administrative error, entry of this order was delayed for several weeks.

**4.** ProAlert represents that it has not used cash collateral to pay the accountant. SLP does not dispute this assertion.

**440**

## DISCUSSION [5]

■ Absent the secured party's consent, a trustee may not use cash collateral unless "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." § 363(c)(2)(B). As a chapter 11 debtor in possession, ProAlert may exercise the pertinent powers of a trustee. *See* § 1107(a).[6]

Section 363(e) states that a bankruptcy court shall "prohibit or condition" the use of property of the estate "as is necessary to provide adequate protection ...." Because the bankruptcy court ruled that SLP was adequately protected, it reasoned that § 363 permitted ProAlert to use SLP's cash collateral, regardless of whether the requirements of § 506(c) were met.

■ Section 506(c) states as follows:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Unless the secured creditor consents to the surcharge, a trustee seeking to recover under § 506(c) must establish that expenses relating to the preservation or disposition of the collateral were (1) reasonable, (2) necessary and (3) provided a quantifiable benefit to the secured creditor. *In re Compton Impressions, Ltd.,* 217 F.3d 1256, 1260–61 (9th Cir.2000). The Ninth Circuit has described the burden imposed by this test as "onerous." *In re Debbie Reynolds Resorts, Inc.,* 255 F.3d 1061, 1068 (9th Cir.2001).

SLP argues that the bankruptcy court's interpretation of § 363(c)(2)(B) violates rules of statutory construction and is unsupported by case law. We disagree.

### A. Statutory Construction

■ ProAlert filed a motion to use cash collateral pursuant to § 363, which is

---

5. Two jurisdictional issues warrant brief discussion. *See Abernathy v. Southern Cal. Edison,* 885 F.2d 525, 527 (9th Cir.1989) (appellate courts are required to raise jurisdictional issues sua sponte).

First, under 28 U.S.C. § 158, only final orders are appealable as of right. However, interlocutory orders may also be appealed with leave of the Panel. 28 U.S.C. § 158(a)(3). A consideration of the relevant factors leads us to conclude that leave to appeal is appropriate in this case. *See In re Roderick Timber Co.,* 185 B.R. 601, 604 (9th Cir. BAP 1995)(discussing factors to consider in deciding whether to grant leave to appeal an interlocutory order). Therefore, we grant leave to appeal in the event the order on appeal is not a final order.

The second jurisdictional issue relates to mootness. The test for mootness is whether the appellate court can grant any effective relief in the event it decides the appeal in the appellant's favor. *In re Steinacher,* 283 B.R. 768, 771 n. 7 (9th Cir. BAP 2002)(citing *Garcia v. Lawn,* 805 F.2d 1400, 1402 (9th Cir. 1986)). An argument could be made that this appeal is moot, because ProAlert timely replenished the funds it used to pay the valuation expert as is required by the cash collateral order. We conclude, however, that this appeal is not moot. "There is an exception to the general mootness rule when an injury is 'capable of repetition, yet evading review.'" *In re Joseph,* 208 B.R. 55, 58 (9th Cir. BAP 1997)(quoting *Cammermeyer v. Perry,* 97 F.3d 1235, 1238 (9th Cir.1996)). This exception applies in this appeal, because the same dispute is certain to resurface in this case in connection with the future use of cash collateral.

6. Section 1107(a) states as follows:

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

the Bankruptcy Code provision governing a debtor in possession's use of property of the estate, specifically including cash collateral. ProAlert did not seek a surcharge under § 506(c). SLP's reliance on rules of statutory construction is misplaced, because it misconstrues the cardinal rule of statutory construction: the plain meaning of a statute controls, except in rare cases where a literal interpretation produces absurd results. *In re Transcon Lines*, 58 F.3d 1432, 1437 (9th Cir.1995). A court must "presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Nothing in § 363 prohibits using cash collateral to pay estate professionals or conditions the use on satisfaction of the test applicable for a surcharge under § 506(c). When the words of a statute are clear, "judicial inquiry is complete." *Id.*

■ SLP relies on two additional rules of statutory construction. As we explained immediately above, resort to rules of statutory construction is inappropriate where, as here, the statute is unambiguous. Even if these rules were pertinent, they would not support SLP's position. SLP argues that the bankruptcy court's interpretation renders § 506(c) superfluous. SLP also relies on the rule of statutory construction that says that where a specific and a general statute address the same subject matter, the specific controls over the general. *See, e.g., In re Padilla*, 222 F.3d 1184, 1192 (9th Cir.2000). According to SLP, § 506(c) is the more specific provision. The fundamental problem with these arguments, and with this appeal, is that SLP fails to acknowledge that sections 363 and 506 serve distinct purposes and apply in different circumstances.

Embodied in the Bankruptcy Code is a policy decision to protect secured credit

practices. 3 James F. Queenan, Jr. et. al, Chapter 11 Theory and Practice § 16.06 (1994). However, the protection afforded to secured creditors is not absolute.

The Code deals in various ways with the property rights of third parties, especially the rights of those holding liens on property. Depending on choices made by the debtor, enforcement of the property rights of third parties may be held in abeyance or entirely abrogated during the bankruptcy. This occurs through the automatic stay and through various preemptive rights given the debtor to reject contracts, cram down reorganization plans, modify debts and obtain postpetition financing that competes with prior lenders for priority.

*Id.* at § 16.03. The protection afforded secured creditors is not absolute, because Congress recognized that secured creditors' interests inevitably would conflict with those of other parties and decided to balance those conflicting interests. Congress's decision to balance a secured creditor's interests against those of other parties is evident in several sections of the Bankruptcy Code, including sections 363 and 506(c).

■ "[T]here is an inherent tension between a debtor's need to use its cash to continue operating and a secured creditor's right to preserve its security interest in the debtor's cash proceeds." Stephen A. Stripp, *Balancing the Interests in Orders Authorizing the Use of Cash Collateral in Chapter 11*, 21 Seton Hall L.Rev. 562, 565–66 (1991). The requirement of adequate protection set forth in § 363 balances these divergent interests by allowing the debtor to use cash collateral while ensuring that the creditor will ultimately receive the full value of that collateral.

The secured creditor has an entitlement to the value of its lien. Adequate protection protects that entitlement. Although

stripped of the right to immediate possession of its property, the creditor receives assurances that the value it could have received through foreclosure will not decline.

3 Queenan, CHAPTER 11 THEORY AND PRACTICE § 16.03. In *In re George Ruggiere Chrysler–Plymouth, Inc.,* 727 F.2d 1017 (11th Cir.1984), the court discussed this tension and observed as follows:

> To resolve this tension between debtor and creditor, 11 U.S.C.A. § 363(c)(2)(B) allows the court to authorize use of cash collateral only if the use accords with other provisions of § 363. The principal restraint on use of cash proceeds is found in § 363(e), which specifies that the court shall condition the use of secured property "as is necessary to provide adequate protection of such interest." Thus, when a creditor opposes a proposed use of cash collateral, the guiding inquiry is whether its security interests are "adequately protected" ....

*Id.* at 1019 (footnote omitted). *See also In re James Wilson Assocs.,* 965 F.2d 160, 171 (7th Cir.1992)(secured creditor's "only entitlement" with regard to its collateral "is to the adequate protection of its interest").

■ Section 506(c) is concerned with an entirely different conflict than that addressed by § 363. Section 506(c) reflects Congress's attempt to balance the interests of secured creditors against those of an estate's unsecured creditors.

> "Section 506(c) was intended by Congress as a codification of ... the equitable principle that a lienholder may be charged with the reasonable costs and expenses incurred by the ... trustee

which are required to preserve or dispose of the property subject to lien to the extent the lien-holder derives a benefit therefrom." 3 *Collier's on Bankruptcy,* ¶ 506.06. "The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs." *In re Codesco, Inc.,* 6 C.B.C.2d 395, 18 B.R. 225 ([Bankr.]S.D.N.Y.1982).

*In re Senior–G & A Operating Co. Inc.,* 957 F.2d 1290, 1298 (5th Cir.1992)(ellipsis in original).

SLP ignores the policy and practical implications of the rule it advocates.

> The purpose of a reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay creditors and produce a return for stockholders. The ethos of chapter 11 is that the public at large benefits when a salvageable business is saved and that the assets of a going business should not be liquidated, at least until a prognosis as to salvageability is made.

7 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 1108.01 (15th ed. Rev.2003). To effectuate the goal of rehabilitation, Congress authorized the debtor in possession to operate the debtor's business during the course of a chapter 11 case. §§ 1107(a); 1108.[7]

In many chapter 11 cases, use of cash collateral is vital to a successful reorganization. As counsel for SLP recognized at oral argument, adoption of its position would give a secured creditor absolute con-

---

7. Section 1108 states as follows:
    Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business.

trol over the use of cash collateral in most cases, because it would be the rare case where a debtor in possession could satisfy § 506(c)'s onerous burden of proving that each and every expenditure, whether for operational or nonoperational expenses, directly benefitted the secured creditor. Thus, adoption of SLP's position would make a successful reorganization subject to the good will of a debtor's secured creditors. Allowing a secured creditor such control would shift the balance carefully struck by Congress and be unduly cumbersome to implement.[8]

### B. *Case Law*

As an initial matter, we observe that there are no Ninth Circuit cases addressing the issue raised in this appeal, although SLP maintains otherwise. SLP states in its reply brief that four Ninth Circuit cases, *In re Debbie Reynolds Resorts, Inc.*, 255 F.3d 1061 (9th Cir.2001); *In re Compton Impressions, Ltd.*, 217 F.3d 1256 (9th Cir.2000); *In re Cascade Hydraulics & Util. Serv., Inc.*, 815 F.2d 546 (9th Cir.1987); and *In re Choo*, 273 B.R. 608 (9th Cir. BAP 2002), stand for the proposition that "proceeds of a secured creditor's collateral may only be used to pay administrative expenses under Bankruptcy Code § 506(c)[.]" Appellant's Reply Brief, p. 2. SLP grossly misstates the holdings of these cases. The Ninth Circuit cases cited by SLP deal with surcharge motions pursuant to § 506(c); they do not address at all the use of cash collateral under § 363 or the relationship between sections 363 and 506(c).[9]

SLP is incorrect when it states that the bankruptcy court's decision is unsupported by the case law. The case the bankruptcy court relied on, *In re Coventry Commons Assocs.*, 149 B.R. 109 (Bankr.E.D.Mich. 1992), is directly on point, and we agree with the court's analysis in that case. In *Coventry Commons*, the bankruptcy court discussed the relationship between § 363 and § 506(c) and held that a debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected, without regard to requirements of § 506(c). SLP tries to distinguish *Coventry Commons* on the basis that use of cash collateral in that case was permitted in connection with confirmation of the debtor's plan. The court in *Coventry Commons* explicitly disapproved of this distinction, stating that

> under § 363, a debtor is entitled to use property in which a creditor has a security interest if that interest is adequately protected. 11 U.S.C. § 363 (1989). This unremarkable principle applies both pre-confirmation and post-confirmation.

*Coventry Commons*, 149 B.R. at 114.

In *In re KNM Roswell Ltd. P'ship*, 126 B.R. 548 (Bankr.N.D.Ill.1991), the bankruptcy court denied a debtor's request to use cash collateral to pay administrative

---

**8.** If SLP's position prevailed, an undersecured creditor could force the debtor in possession or trustee in an operating case to demonstrate that each individual component of its budget satisfied the § 506(c) requirements, including that the expense conferred a quantifiable benefit to the creditor. This would almost always be far more difficult than proving that the creditor is adequately protected. Further, such a rule would impose significant additional administrative expenses on estates, and substantial burdens (often in the form of emergency hearings in the initial days of chapter 11 cases) on bankruptcy courts.

**9.** For the most part, we limit our discussion of cases in this section to those cited by the parties that involve the disputed use of cash collateral under § 363. The parties cite several cases that are of limited value in analyzing the issue before us, because they do not meet this standard.

expenses and attorney fees after finding that there was no evidence that the creditor was oversecured and that the debtor was otherwise unable to adequately protect the secured creditor's interest. The court then discussed the possibility of a § 506(c) surcharge. In its discussion, the court described a § 506(c) surcharge as an exception to the requirements for the contested use of cash collateral under § 363. *Id.* at 556–57. *See also In re Blue Ridge Motel Assocs.*, 126 B.R. 477 (Bankr. W.D.Pa.1991) (analyzing a motion for a § 506(c) surcharge after the debtor defaulted under an earlier § 363 adequate protection order). These two cases illustrate that, while the provisions of sections 363 and 506(c) may apply to the same secured creditor in a single case, they do so in different factual circumstances and at different stages of the bankruptcy case.

■ Most of the § 363 cases cited by the parties do not discuss directly the relationship between § 363 and § 506(c), but a careful reading of most of these cases confirms that the key consideration in deciding whether to allow the use of cash collateral is whether the secured creditor's interest is adequately protected. *See In re James Wilson Assocs.*, 965 F.2d 160, 171 (7th Cir.1992)(permitting debtor to use cash collateral to pay attorney fees because secured creditor adequately protected); *In re Ranch Partners, Ltd.*, 146 B.R. 833 (D.Colo.1992)(stating that a debtor may not use cash collateral to pay reorganization-related attorney fees absent compliance with § 363(c)(2)); *In re Atrium Dev. Co.*, 159 B.R. 464 (Bankr.E.D.Va. 1993)(§ 363(c) permits a debtor to use cash collateral if court finds secured creditor adequately protected); *In re Precast Structures, Inc.*, 122 B.R. 304

(Bankr.S.D.Tex.1990)(allowing use of cash collateral to pay debtor's counsel where creditor over collateralized and thus adequately protected); *In re Triplett*, 87 B.R. 25, 27 (Bankr.W.D.Tex.1988)(cash collateral may be used "for the general benefit of the estate and need not be devoted exclusively to the protection of the creditor or the collateral").[10]

■ In some of these cases, the value of the collateral exceeds the amount of the secured debt. SLP tries to distinguish these cases on the basis that, in contrast, it is undersecured. However, over-collateralization is simply one possible form of adequate protection. *In re 354 E. 66th St. Realty Corp.*, 177 B.R. 776, 781–82 (Bankr. E.D.N.Y.1995); *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr.S.D.N.Y.1994). The bankruptcy court in this case ordered other forms of adequate protection, and SLP does not challenge the sufficiency of the bankruptcy court's adequate protection determination in this appeal.

We acknowledge that there is language in three of the cases cited by SLP that appears to support the rule it advocates in this appeal. *See In re River Oaks Ltd. P'ship*, 166 B.R. 94, 99 (E.D.Mich.1994); *In re EES Lambert Assocs.*, 62 B.R. 328, 340 (Bankr.N.D.Ill.1986); *In re RLA of Madison, Inc.*, 177 B.R. 78 (Bankr. M.D.Tenn.1994). To the extent these cases are inconsistent with the bankruptcy court's interpretation of the requirements for use of cash collateral under § 363, we find the bankruptcy court's interpretation better reasoned. The plain language of § 363 allows a debtor to use cash collateral if the secured creditor's interest is adequately protected and, as we discuss

---

**10.** The court in *In re Tri–County Water Ass'n, Inc.*, 91 B.R. 547, 550 (Bankr.S.D.1988), clearly states, albeit in dicta, that a debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected.

above, the bankruptcy court's interpretation finds ample support in the case law.

## CONCLUSION

The bankruptcy court did not err in allowing ProAlert to use SLP's cash collateral without considering whether the requirements for a § 506(c) surcharge were met. We therefore AFFIRM.