

# FILED

**NOT FOR PUBLICATION**

JUL 21 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PROFESSIONAL TECHNICAL<br>SECURITY SERVICES, INC.,<br>　　　　　　Debtor. | BAP No. NC-22-1220-CBG<br>BAP No. NC-22-1228-CBG<br>(related appeals)<br><br>Bk. No. 3:22-bk-30062-HLB |
| COMMITTEE OF CREDITORS<br>HOLDING UNSECURED CLAIMS;<br>BRINKMAN LAW GROUP, PC;<br>DUNDON ADVISERS LLC,<br>　　　　　　Appellants,<br>v.<br>INTERNAL REVENUE SERVICE;<br>JANINA M. HOSKINS, Chapter 7<br>Trustee,<br>　　　　　　Appellees. | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Before: CORBIT, BRAND, and GAN, Bankruptcy Judges.

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

The official unsecured creditor's committee ("Committee") appeals the bankruptcy court's order overruling its objection to chapter 11[1] debtor Professional Technical Security Services Inc.'s ("PTSS") motion to sell substantially all of its assets pursuant to § 363. The Committee also appeals the order approving a stipulation between PTSS and the U.S. Department of the Treasury, Internal Revenue Service ("IRS") relating to the distribution of proceeds from the § 363 sale. Because we find no error, we AFFIRM.

## FACTS

### A.    History

PTSS was a privately held San Francisco-based security company with approximately 580 employees.[2] PTSS provided personalized and professional unarmed security services in high-rise and commercial properties. PTSS's failure to pay federal taxes for years caused it to incur significant tax debt and contributed to PTSS's financial difficulties. Tax debt represented roughly 90% of PTSS's outstanding debts.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Cal. Com. Code" references are to the California Commercial Code.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the main case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

### B. Chapter 11 bankruptcy

#### 1. First day motions including motion to use cash collateral

In February 2022, PTSS filed a voluntary chapter 11 petition with the intent to continue operating as a debtor-in-possession ("DIP"). As part of its first day motions, PTSS requested court authorization to use its cash collateral (the "Cash Collateral Motion"). The Cash Collateral Motion identified three entities that had a security interest in PTSS's cash collateral: City National Bank; the IRS; and the Employment Development Department (collectively, the "Secured Parties"). To provide adequate protection, PTSS proposed to grant post-petition replacement liens to the Secured Parties in the "same amounts and priority as the Secured Parties' existing rights in the Cash Collateral (as may later be determined in this case)." The Cash Collateral Motion identified PTSS's cash collateral as its checking and savings accounts and its accounts receivable.

#### 2. Cash Collateral Motion approved

On February 4, 2022, after a hearing on the first day motions, the bankruptcy court entered an interim cash collateral order. After another hearing on March 17th, the court entered a final order granting PTSS's Cash Collateral Motion ("Final Cash Collateral Order"). The Final Cash Collateral Order stated in relevant part that in "consideration for the use of the Cash Collateral, the Secured Parties shall receive as adequate protection a post-petition replacement lien on all cash collateral generated post-petition, in the same order of priority as existed prepetition." In May, the

3

Office of the United States Trustee for the Northern District of California appointed the Committee pursuant to § 1102(a).

### 3. Committee's motion to reconsider the Final Cash Collateral Order denied

On June 29, 2022, the Committee filed a motion to reconsider the Final Cash Collateral Order. Both PTSS and City National Bank filed responses. After a hearing, the bankruptcy court denied the Committee's motion "for the reasons stated on the record." The Committee did not appeal the denial order.

### C. PTSS's § 363 sale motion and IRS stipulation

Despite PTSS's efforts to reorganize, PTSS's continued operations resulted in a "net loss of roughly $500,000 per month post-petition." Based on its ongoing losses, PTSS decided to pursue a § 363 sale. Accordingly, PTSS sought and received approval from the bankruptcy court to employ B. Riley Advisory Services ("B. Riley") to assist with the "§ 363 sale process." Beginning in May, B. Riley implemented a comprehensive marketing strategy to sell PTSS's assets. Despite "robust" marketing, PTSS received only one qualified bid. The Buyer[3] offered to purchase PTSS's assets for $4.6 million ("Sale Proceeds").[4]

---

[3] In the Sale Motion, PTSS identified the buyer as Paladin Security Group Ltd., a Canadian corporation with no connection to PTSS. However, just a week later, in the stipulation with the IRS and in the Order approving the sale motion, the buyer is identified as "PalAmerican Security (California) Inc.," a Delaware corporation. There is no explanation for the change of the entity in the record provided.

[4] The terms of the sale indicated that the price represented approximately $1.6

4

**1.	§ 363 Sale Motion**

On September 12, 2022, PTSS filed a motion pursuant to § 363 seeking an order (1) authorizing the sale of substantially all of its assets free and clear of liens, (2) approving the assignment of certain executory contracts, and (3) approving a negotiated compromise with B. Riley for reduced fees ("Sale Motion").

PTSS acknowledged that Buyer's offer was not sufficient to pay all secured claims, it nevertheless asserted that the sale was "based upon its sound business judgment," and that Buyer's offer was fair, reasonable, and in the creditors' best interest. Buyer was a good faith purchaser within the meaning of § 363(m), according to PTSS, because the Buyer had no previous relationship with PTSS and the sale was negotiated at arm's length by sophisticated parties.

PTSS asserted that its assets should be sold free and clear of all liens pursuant to § 363(f) for three reasons. First, the sale satisfied § 363(f)(1) ("such a sale is permitted under applicable non-bankruptcy law") because absent the sale, City National Bank would foreclose on its interest and the assets would be sold free and clear of junior liens. Second, the sale satisfied § 363(f)(2) ("the party asserting such a lien, claim or interest consents to such sale") because PTSS anticipated that both City National Bank and the IRS would consent to the Sale. In a footnote, PTSS explained that it

million for accounts receivable, $1.9 million for unbilled work-in-progress, and a $1.1 million premium.

5

anticipated that the IRS would agree to the sale if the IRS was paid the balance of the Sale Proceeds remaining after paying City National Bank's claim and paying $500,000 for administrative claims ("Estate Carveout") and $200,000 for B. Riley's reduced commission fees ("Commission Carveout"). Third, the sale satisfied § 363(f)(4) ("the interest is the subject of a bona fide dispute") because a bona fide dispute existed as to the IRS's claim based on the Committee's motion to reconsider the Final Cash Collateral Order.

## 2. IRS Stipulation

Following the Sale Motion, PTSS filed a proposed "Stipulation for Consent to Sale of Substantially All of the Debtor's Assets Free and Clear of Liens; for Carveout from Sale Proceeds, and Payment of the Secured Claim to the IRS" (the "IRS Stipulation"). The IRS Stipulation provided for the distribution of Sale Proceeds in the following order: (1) City National Bank's claim; (2) Estate and Commission Carveouts; and (3) all remaining Sale Proceeds to the IRS. The IRS Stipulation also provided that the IRS would continue to have a secured claim against PTSS's assets that were not included in the § 363 sale to the "same extent, validity and priority as it had prior to PTSS's bankruptcy filing."

## 3. Committee's limited objection to PTSS's Sale Motion

The Committee filed a limited opposition to the Sale Motion. The Committee complained that because PTSS's principal, Sergio Reyes Jr., was co-liable for the tax debt, he had a conflict of interest and should not have

6

been the one to negotiate a deal with the IRS because it put him in a "better position than he would be absent the deal."

Without legal or evidentiary support, the Committee also asserted that the IRS had no lien on PTSS's "cash, A/R, or [work-in-progress] by operation of California and Bankruptcy Law," and therefore the Sale Proceeds were "traceable to property over which the IRS had no valid lien." Finally, the Committee also asserted that the Carveouts were impermissible because it allowed those claimants to "step ahead of all other administrative claimholders."

### 4. Sale Motion approved

After two hearings and additional briefing, the bankruptcy court entered an order granting the Sale Motion ("Sale Order").[5]

The bankruptcy court determined that the § 363 sale should be approved and effective immediately after finding that: notice was proper and interested parties had the opportunity to be heard; compelling circumstances existed for the sale and the sale was a reasonable exercise of PTSS's sound business judgment and in the best interest of the creditors; Buyer was a good faith purchaser; Buyer's offer was the highest and best and provided fair and reasonable consideration for PTSS's assets; Secured

---

[5] The Sale Order was captioned: Order Granting Debtor's Motion for Entry of an Order (I) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of Liens (II) Approving the Assignment of Executory Contracts, (III) Allowing Payment of Compromised Fee to B. Riley Upon Closing and (IV) Granting Related Relief.

Creditors were adequately protected satisfying § 363(e); and the sale did not constitute a sub rosa chapter 11 plan.

The bankruptcy court allowed PTSS to pay City National Bank's claim from the Sale Proceeds, but ordered the remaining Sale Proceeds held "in trust . . . pending further orders of the court."

### 5. Additional briefing and proceedings regarding distribution of remaining Sale Proceeds

Both PTSS and the IRS filed additional briefing regarding the IRS's right to the remaining Sale Proceeds. PTSS explained that, as adequate protection for the use of its cash collateral, it intended to maintain the IRS's prepetition rights, which were all encompassing, because at the time the petition was filed, the IRS had a valid lien under the Federal Tax Lien Act on all of PTSS's assets. Accordingly, the Final Cash Collateral Order provided the IRS with adequate protection in the form of a post-petition replacement lien to the same extent as the IRS held prepetition.

In supplemental briefing, the IRS also noted that the Committee was merely repeating arguments previously raised and rejected by the bankruptcy court. Contrary to the Committee's assertions, the IRS argued that the Final Cash Collateral Order granted the IRS a replacement lien in PTSS's post-petition assets, such as PTSS's "cash, accounts receivables, and work in progress, to the same extent as they existed on the petition date." Furthermore, the Committee should have filed an adversary action if it wanted to challenge the validity and extent of the IRS's lien.

8

In a sur-reply, the Committee argued that the definition of cash collateral in § 363(a) did not include all assets and specifically did not include accounts receivable or work-in-progress.

### 6. Bankruptcy court overrules the Committee's limited opposition

At a hearing on October 25, 2022, the bankruptcy court articulated several reasons why it was overruling the Committee's limited opposition.

First, the Committee had failed to appear at the hearing. Second, the Committee's arguments were previously raised and rejected for the reasons previously articulated by the court "on the record." Third, the Committee's arguments lacked merit. The bankruptcy court reasoned that the IRS's lien arose pursuant to 26 U.S.C. § 6321 and attached to all PTSS's prepetition assets. The IRS's tax lien was not limited to property then held by PTSS but continued to attach to interests acquired by PTSS until the lien was satisfied. The court acknowledged that the automatic stay generally stops the attachment of liens to post-petition property. However, both cash collateral orders "clearly stated" that the Secured Parties would "receive, as adequate protection, a post-petition replacement lien on all cash collateral generated post-petition in the same order of priority as existed prepetition." The bankruptcy court determined this language evidenced PTSS's and the court's intent to maintain the status quo of the IRS's secured interest in PTSS's assets post-petition. Furthermore, the bankruptcy court rejected the Committee's argument that the holdings in *United States v.*

*Fuller (In re Fuller)*, 134 B.R. 945, 946 (9th Cir. 1992) and *United States v. McGugin (In re Braund)*, 423 F.2d 718 (9th Cir. 1970) applied because those cases were chapter 7 cases and neither involved cash collateral orders.

Following the hearing, the bankruptcy court entered an order overruling the Committee's opposition "in its entirety. . . for the reasons stated on the record" ("Order Overruling Committee's Opposition").

### 7. Bankruptcy court approves IRS Stipulation

On November 3, 2022, the bankruptcy court entered an order approving the IRS Stipulation ("Order Approving IRS Stipulation"). The order directed PTSS to "pay the balance of the Sale Proceeds arising from the Sale . . . in accordance with the terms of the IRS Stipulation."

The Committee timely appealed both the Order Overruling Committee's Opposition and the Order Approving IRS Stipulation.[6]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(2)(A), (M). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in determining that the Sale Proceeds were cash collateral?

---

[6] BAP No. NC-22-1220 is the appeal of the Order Overruling Committee's Opposition and BAP No. NC-22-1228 is the appeal of the Order Approving IRS Stipulation.

Did the bankruptcy court abuse its discretion in approving the IRS Stipulation?

## STANDARDS OF REVIEW

We review de novo the legal standard used by the trial judge to determine whether the funds in question are cash collateral. *Zeeway Corp. v. Rio Salado Bank* (*In re Zeeway Corp.*), 71 B.R. 210, 211 (9th Cir. BAP 1987). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. 2014). We review the bankruptcy court's fact findings underlying its legal conclusions for clear error. *Bronitsky v. Bea (In re Bea)*, 533 B.R. 283, 285 (9th Cir. BAP 2015). We must affirm the bankruptcy court's fact findings unless those findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). A bankruptcy court's decisions to approve a sale of estate property under § 363 or to approve a compromise of a claim under Rule 9019 are reviewed for abuse of discretion. *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp.* (*In re Debbie Reynolds Hotel & Casino, Inc.*), 255 F.3d 1061, 1065 (9th Cir. 2001). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

11

## DISCUSSION

The Committee argues that the bankruptcy court erred in both overruling its opposition to the § 363 sale and in approving the IRS Stipulation because the Sale Proceeds were not cash collateral as defined in § 363(a) and therefore, not subject to the IRS's post-petition replacement lien. We disagree.

### A.   Federal tax liens

Because PTSS was delinquent in paying its federal taxes, the IRS obtained a lien on all PTSS's prepetition "property and rights to property, whether real or personal." 26 U.S.C. § 6321. The broad statutory language "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719-720 (1985) (citation omitted); *see also Glass City Bank of Jeanette, Pa., v. United States*, 326 U.S. 265, 267 (1945) ("Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes."); *Drye v. United States*, 528 U.S. 49, 56 (1999) ("When Congress so broadly uses the term 'property,' . . . the Legislature aims to reach every species of right or interest protected by law and having an exchangeable value.").

Importantly, the tax lien attached not only to property belonging to PTSS as of the date the lien arose, but also attached to property and rights to property PTSS thereafter acquired, at any time, during the life of the lien. 26 U.S.C. § 6322 (the lien "arise[s] at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied").

**B.    The automatic stay, cash collateral, and adequate protection**

Despite the broad reach of federal tax liens, a bankruptcy petition generally works to prevent pre-petition liens and other obligations from attaching to property after the petition has been filed. § 362(a); *In re Fuller*, 134 B.R. at 947. Under § 362, the stay is effective against all entities and any act. "Entities" encompasses governmental units and includes the IRS. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209 (1982). Accordingly, because PTSS filed a bankruptcy petition, the automatic stay prevented the IRS from enforcing its liens. However, the IRS's "tax lien [was] not dissolved; nor is its status as a secured creditor destroyed." *Id.* at 211.

Beyond impacting creditors, PTSS's chapter 11 bankruptcy petition also halted PTSS's ability to use its cash collateral in which the Secured Parties had an interest. A debtor-in-possession may use cash collateral, even in the ordinary course of business, only if the creditors consent or the court grants authorization. § 363(c)(2); § 1107(a). "There is an inherent tension between a debtor's need to use its cash to continue operating and a secured creditor's right to preserve its security interest in the debtor's cash proceeds." *Sec. Leasing Partners, LP v. ProAlert, LLC* (*In re Proalert, LLC*), 314 B.R. 436, 441 (9th Cir. BAP 2004) (cleaned up). If the court authorizes the use of cash collateral, that use must be conditioned as necessary to provide adequate protection of the creditor's interest in the collateral. § 363(e).

Because it needed access to its cash collateral to continue operations, PTSS sought and obtained court authorization. As adequate protection,

PTSS provided the Secured Parties a "post-petition replacement lien on all cash collateral generated post-petition, in the same order of priority as existed prepetition." The question is whether the post-petition replacement lien covers all of the Sale Proceeds.

**C.    The Committee has not demonstrated that the bankruptcy court erred in determining the Sale Proceeds qualified as cash collateral.**

Although the Committee appeals both the Order Overruling Committee's Opposition and the Order Approving IRS Stipulation, it is evident from the briefing that the Committee is not objecting to the propriety of the § 363 sale, rather, the Committee is solely concerned with the distribution of Sale Proceeds to the IRS. The Committee argued to the bankruptcy court, and again on appeal, that the Sale Proceeds do not qualify as cash collateral and therefore, were not subject to the IRS's post-petition replacement liens.

Importantly, the Committee has the burden of filing an adequate record to allow review of the orders it appeals. *Drysdale v. Educ. Credit Mgmt. Corp (In re Drysdale)*, 248 B.R. 386, 388 (9th Cir. BAP 2000). When findings of fact and conclusions of law are made orally on the record, a transcript of those findings is mandatory for appellate review. *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 416-17 (9th Cir. BAP 1999); Fed. R. App. Proc. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the

14

evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.").

PTSS's Cash Collateral Motion requested "post-petition replacement liens, in the same amounts and priority as the Secured Parties' existing rights in the Cash Collateral (as may later be determined in this case)."

Cash collateral is defined in § 363(a) as:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

The Sale Proceeds are arguably cash collateral because cash collateral by definition includes cash, cash equivalents, and proceeds. Furthermore, it appears that the bankruptcy court considered the definition of cash collateral, the breadth and intent of its cash collateral orders, and the Secured Parties' rights in the cash collateral, several times and at several hearings.[7] Furthermore, the bankruptcy court's rulings were based on the

---

[7] The relevant hearings include: The February 4th hearing on first day motions, including the motion to use cash collateral; the March 17th hearing on the Final Cash Collateral Order; the August 4th hearing on the Committee's motion to reconsider the Final Cash Collateral Order; the September 22nd and 28th hearings on PTSS's Sale Motion, and the October 25th hearing on the Committee's limited opposition to the Sale

"reasons stated on the record." As such, the transcripts of those hearings are critical to our review.

Despite the importance of the bankruptcy court's oral findings, the Committee provided only the transcript of the October 25, 2022, hearing. The October 25th hearing addressed the Committee's limited opposition to the Sale Motion. It was also the hearing at which the Committee failed to appear and prosecute its opposition. The bankruptcy court subsequently approved the IRS Stipulation and distribution of the Sale Proceeds to the IRS based on its finding that the post-petition replacement lien granted to the IRS by the Final Cash Collateral Order was broad enough to capture all of the Sale Proceeds.

Because the Committee only provided the transcript of one hearing, this panel may presume nothing in the missing transcripts would help the Committee's position on appeal. *See U.S. Dep't of Educ. v. Carrion (In re Carrion)*, 601 B.R. 523, 525 n.3 (9th Cir. BAP 2019). Although our review of whether the Sale Proceeds are cash collateral is de novo, the panel reviews the bankruptcy court's fact findings underlying its legal conclusions for clear error. From the record provided, we cannot determine that the bankruptcy court committed clear error in finding that PTSS intended to provide the IRS with a post-petition replacement lien broad enough to

---

Motion.

capture the Sale Proceeds and that cash collateral included the Sale Proceeds.

**2. The bankruptcy court did not abuse its discretion in approving the IRS Stipulation.**

The Committee argues on appeal that account receivables and work-in-progress are not cash collateral. Therefore, according to the Committee, the Sale Proceeds attributable to account receivables and work-in-progress are not subject to the IRS's post-petition replacement lien.

"The nature and extent of security interests are determined by state law." *Arnot v. Endresen (In re Endresen)*, 548 B.R. 258, 269 (9th Cir. BAP 2016) (citation omitted). In California, accounts receivable are generally considered to be cash collateral. *In re Anaheim Elec. Motor, Inc.*, 137 B.R. 791, 796 (Bankr. C.D. Cal. 1992) (account "[r]eceivable is considered to be 'cash collateral'"). Similarly, the defined term cash collateral expressly encompasses proceeds and under California law, proceeds include whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral.[8] Cal. Comm. Code § 9102(a)(64)(A).

---

[8] California Commercial Code § 9102 includes the following applicable definitions:
(a)(9) defines "Cash proceeds" as "proceeds that are money, checks, deposit accounts, or the like."
(a)(12) defines "Collateral" as property subject to a security interest including:
 (A) Proceeds to which a security interest attaches.
 (B) Accounts, chattel paper, payment intangibles, and promissory notes that have been sold.
 . . . .

17

"The concept of proceeds is only implicated when one asset is disposed of and another is acquired as its substitute." *In re Delco Oil, Inc.*, 365 B.R. 246, 250 (Bankr. M.D. Fla. 2007) (cleaned up). The "term 'proceeds' is to be given a broad and flexible interpretation . . ." *Stodd v. Reynard* (*In re Shooting Star Enterprises, Inc.*), 76 B.R. 154, 156 (9th Cir. BAP 1987), *aff'd*, 843 F.2d 1576 (9th Cir. 1988); *see also Am. Nat'l Bank v. Cloud*, 201 Cal. App. 3d 766, 776 (1988) ("'proceeds' includes an account arising when the right to payment accrues"); *Producers Cotton Oil Co. v. Amstar Corp.*, 197 Cal. App. 3d 638, 651 (Cal. Ct. App. 1988) (money from sale of collateral was proceeds even though never actually received by debtor but by third party); *Unsecured Creditors Comm. v. Marepcon Fin. Corp.* (*In re Bumper Sales, Inc.*), 907 F.2d 1430, 1437 (4th Cir. 1990) (secured creditor maintained security interest in post-petition proceeds generated from the sale of the debtor's prepetition inventory and collection of its accounts).

In the instant case, the Sale Proceeds were acquired from the sale of PTSS's assets. It is undisputed that the IRS had a lien on all PTSS's prepetition assets. The Committee has not provided any evidence beyond mere supposition that the Sale Proceeds are not attributable to sale of

---

(a)(64) defines "Proceeds," as any of the following property:

    (A) Whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral.

    (B) Whatever is collected on, or distributed on account of, collateral.

    (C) Rights arising out of collateral.

prepetition cash collateral. Because there is a sufficient statutory and evidentiary basis for the bankruptcy court to find that the Sale Proceeds were attributable to prepetition cash collateral and therefore, subject to the IRS's replacement lien, we cannot find the bankruptcy court erred in approving the IRS Stipulation and distributing the remaining Sale Proceeds to the IRS.

**D.    The Committee may not raise an issue for the first time on appeal.**

The Committee also argues on appeal that the bankruptcy court erred in approving the IRS Stipulation because it did not satisfy the Rule 9019(a) requirements. The Committee did not raise this issue before the bankruptcy court. Therefore, we need not consider it. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (we generally will not consider arguments raised for the first time on appeal).

## CONCLUSION

Based on the foregoing, we AFFIRM.